1
2
3
4
5
6              IN THE UNITED STATES DISTRICT COURT
7
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9
10   WILBUR LYNN McCLORE,                    No. C 04-2101 WHA (PR)
11                    Petitioner,            **ORDER DENYING PETITION
                                             FOR WRIT OF HABEAS
12    vs.                                    CORPUS**
13   JILL BROWN, Warden,
14                    Respondent.
                                        /
15

16          This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254.  The

17   petition is directed to a denial of parole.

18          The court ordered respondent to show cause why the writ should not be granted.

19   Respondent has filed an answer and a memorandum of points and authorities in support of it,

20   and has lodged exhibits with the court.  Petitioner has responded with a traverse.  For the

21   reasons set forth below, the petition is **DENIED**.

22                                **STATEMENT**

23          In 1987 petitioner was convicted of kidnaping for robbery, a violation of Section 209(b)

24   of the California Penal Code, and sentenced to prison for a term of life plus one year (Ans.,

25   Exh. A).[1]  Petitioner was owed money by someone he ran into at a Wendy's restaurant, who

26   later was his co-defendant (Exh. C (6-7-01 parole hearing) at 10).  The co-defendant picked out

27   a woman who was getting out of her car, pushed her back into the car, grabbed her by the

28

          [1] All further citations to "Exh." in this order are to the exhibits attached to the
respondent's answer.

throat, struck her in the face, and demanded money (Exh. B (probation report) at 2).  Petitioner manhandled the victim into the back seat, got into the passenger seat, and warned her that they had a gun and would kill her if she "made a stupid move."  (*Ibid.*)  They drove to a shopping mall where they made the victim go into two stores with them and buy them clothes and shoes (*id.* at 3).  After leaving the mall they pulled over to the side of a freeway, where petitioner took the victim's jewelry and forced her out of the car (*ibid.*).

On June 7, 2001, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole (Exh. C at 55-60).  The Board based its decision upon the nature of petitioner's conviction offenses, his escalating pattern of criminal activity, his failure to benefit from previous attempts to deter him from criminality (he was on parole at the time of the current offense), his prior criminal activity, failure to sufficiently participate in self-help programs, lack of sufficient employment plans, receipt of disciplinary reports in the prison, and need for continued therapy (*ibid.*).

On October 23, 2003, the Board again denied parole, for essentially the same reasons (Exh. F at 47-53).  Petitioner challenges both denials in this petition.  Because the record and the reasons for the denial were nearly identical, they will be discussed together with differences, where they exist, noted.

## DISCUSSION

**A.    STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong

2

United States District Court

For the Northern District of California

1   applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340

2   (2003).

3          A state court decision is "contrary to" Supreme Court authority, that is, falls under the

4   first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

5   reached by [the Supreme] Court on a question of law or if the state court decides a case

6   differently than [the Supreme] Court has on a set of materially indistinguishable facts."

7   *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of"

8   Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies

9   the governing legal principle from the Supreme Court's decisions but "unreasonably applies

10  that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas

11  review may not issue the writ "simply because that court concludes in its independent judgment

12  that the relevant state-court decision applied clearly established federal law erroneously or

13  incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support

14  granting the writ.  *See id.* at 409.

15         "Factual determinations by state courts are presumed correct absent clear and

16  convincing evidence to the contrary."  *Miller-El*, 537 U.S. at 340.  This presumption is not

17  altered by the fact that the finding was made by a state court of appeals, rather than by a state

18  trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

19  1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and

20  convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory

21  assertions will not do. *Id.*

22         Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

23  will not be overturned on factual grounds unless objectively unreasonable in light of the

24  evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340; *see also Torres*

25  *v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

26         When there is no reasoned opinion from the highest state court to consider the

27  petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501

28  U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**United States District Court**
For the Northern District of California

**B.    ISSUES PRESENTED**

**1.        Liberty Interest in Parole**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.  Respondent contends that California prisoners have no liberty interest in parole, so have no due process rights in relation to the grant or denial of it.

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause.  The right was created by the "expectancy of release provided in [the Nebraska parole statute.]"  That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12.  The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987).  There it held that a similar liberty interest was created even though the parole board had great discretion.  *Id.* at 381.  For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995).  *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole).  In such a case, a prisoner has liberty interest in parole that cannot be denied without adequate procedural due process protections.  *See Allen*,

4

**United States District Court**
For the Northern District of California

1   482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

2       Respondent contends that California law does not create a liberty interest in parole. But

3   California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and

4   *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on

5   parole.  In California, the panel or board "shall set a release date unless it determines that the

6   gravity of the current convicted offense or offenses, or the timing and gravity of current or past

7   convicted offense or offenses, is such that consideration of the public safety requires a more

8   lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be

9   fixed at this meeting." Cal. Penal Code § 3041(b).  Under the clearly established framework of

10  *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in

11  release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The scheme

12  requires that parole release be granted unless the statutorily defined determination (that

13  considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16

14  (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence

15  implicated prisoner's liberty interest).  In sum, the structure of California's parole scheme --

16  with its mandatory language and substantive predicates – gives rise to a federally protected

17  liberty interest in parole such that an inmate has a federal right to due process in parole

18  proceedings.

19      Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct.

20  92 (2005), as authority for his contention that the California statute does not create a liberty

21  interest in parole.  This argument has been rejected by the United States Court of Appeals for

22  the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

23      Respondent's argument as to liberty interest is without merit.

24              **2.     Some Evidence**

25      Petitioner contends that denial of parole was not supported by "some evidence" and thus

26  violated his due process rights.

27      The Supreme Court has clearly established that a parole board's decision deprives a

28  prisoner of due process if the board's decision is not supported by "some evidence in the

United States District Court

For the Northern District of California

1    record," or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying

2    "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*,

3    472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same).  The evidence underlying the

4    Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904;

5    *Biggs*, 334 F.3d at 915.  The some evidence standard identified in *Hill* is clearly established

6    federal law in the parole context for purposes of § 2254(d).  *See Sass*, 461 F.3d at 1128-1129.

7        Ascertaining whether the some evidence standard is met "does not require examination

8    of the entire record, independent assessment of the credibility of witnesses, or weighing of the

9    evidence.  Instead, the relevant question is whether there is any evidence in the record that

10   could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*,

11   461 F.3d at 1128.  The some evidence standard is minimal, and assures that "the record is not so

12   devoid of evidence that the findings of the disciplinary board were without support or otherwise

13   arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

14       Several recent Ninth Circuit cases have addressed the issue of the Board's use of

15   evidence from the commitment offense and prior offenses.  In *Biggs*, the court explained that

16   the some evidence standard may be considered in light of the Board's decisions over time.

17   *Biggs*, 334 F.3d at 916-917.  The court reasoned that "[t]he Parole Board's decision is one of

18   'equity' and requires a careful balancing and assessment of the factors considered . . . A

19   continued reliance in the future on an unchanging factor, the circumstance of the offense and

20   conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison

21   system and could result in a due process violation." *Id.*  Although the *Biggs* court upheld the

22   initial denial of a parole release date based solely on the nature of the crime and the prisoner's

23   conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs

24   continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a

25   parole date simply because of the nature of his offense would raise serious questions involving

26   his liberty interest." *Id.* at 916.

27       The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to

28   speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129.  *Sass*

6

United States District Court
For the Northern District of California

1    determined that it is not a due process violation per se if the Board determines parole suitability

2    based solely on the unchanging factors of the commitment offense and prior offenses.  *See id.*

3    (prisoner's commitment offenses in combination with prior offenses amounted to some

4    evidence to support the Board's denial of parole).  However, *Sass* does not dispute the argument

5    in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current

6    threat to the public safety.

7        In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded

8    that relief for Irons was precluded by *Sass*.  *See Irons*, 470 F.3d at 664.  The Ninth Circuit

9    explained that all of the cases in which it previously held that denying parole based solely on

10   the commitment offense comported with due process were ones in which the prisoner had not

11   yet served the minimum years required by the sentence.  *Id.* at 665.  Also, noting that the parole

12   board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's

13   rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in

14   some cases, indefinite detention based solely on an inmate's commitment offense, regardless of

15   the extent of his rehabilitation, will at some point violate due process, given the liberty interest

16   in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917).  Even

17   so, the Ninth Circuit has not said when a complete reliance on unchanging circumstances would

18   amount to a due process violation.

19       That is not what happened here, however.  In both hearings the denials were, as set out

20   in the statement above, based on not only the characteristics of the crime, in which a young

21   woman was kidnaped and terrorized, but on that fact that petitioner was on parole at the time he

22   committed the crime, showing his lack of response to society's attempts to reform him; his

23   previous criminal record; his receipt of disciplinary rule-violation reports in prison; and other

24   factors.  These events were fairly far in the past, and at some point they would cease to be worth

25   any weight, under the *Biggs* approach; but at this point, they are evidence supporting denial of

26   parole.

27       Although petitioner's crime was not as horrific as some life prisoners, and his

28   psychological reports, which assessed his dangerousness at no more than the average citizen,

7

1   were favorable factors, that has no impact on whether there was "some evidence" to support the

2   decisions. *See Hill*, 472 U.S. at 455 (assessment of whether there was 'some evidence' to

3   support a decision does not require weighing of evidence).

4          The evidence supporting the denial constituted "some evidence;" petitioner's due

5   process rights were not violated.  As a result, the rejection of this claim by the state appellate

6   courts was not contrary to, nor an unreasonable application of, clearly-established Untied States

7   Supreme Court authority.

8                                    **CONCLUSION**

9          The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

10         **IT IS SO ORDERED.**

11

12  Dated:  September   18   , 2007.

13                                                WILLIAM ALSUP
                                                  UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  G:\PRO-SE\WHA\HC.04\MCCLORE101.RUL.wpd

**United States District Court**
For the Northern District of California